**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**ANDREA ANDERSON**                                                                 **PLAINTIFF**

**VS.**                            **CASE NO. 3:07CV00110 JMM**

**FAMILY DOLLAR STORES**
**OF ARKANSAS, INC.**                                                      **DEFENDANT**

**ORDER**

Pending before the Court are defendant's Motion for Summary Judgment and Motion to

Strike.  Plaintiff has responded to both motions.  For the reasons stated below, the Motion for

Summary Judgment is granted (#14) and the Motion to Strike is denied in part and granted

in part (#22).

Plaintiff brings claims of sexual harassment in the form of a hostile work environment and

*quid pro quo* harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

and the Arkansas Civil Rights Act of 1993 ("ACRA"), and a pendent state claim for the tort of

outrage.  Defendant contends that plaintiff has failed to establish a *prima facie* case of sexual

harassment under either theory, that it cannot be held vicariously liable for supervisor harassment,

and that plaintiff's allegations do not rise to the level of severity necessary to establish the tort of

outrage.

I. *Facts*

Plaintiff was initially hired by defendant on May 30, 2006 as a manager trainee at the Hardy,

Arkansas location.  Sherry Smith, the manager of the Hardy Dollar Store, told plaintiff during her

initial interview that if she would be nice to the district manager, Drew White, he would like her.  On

1

her first day Smith left plaintiff to manager the store with only one cashier to assist her.  The

following day Smith terminated plaintiff's employment.

After filing a complaint with the defendant's human resources division, plaintiff was

interviewed and re-hired as a manager trainee by White who was the district manager for northeast

Arkansas.  Plaintiff chose the Pocahontas Dollar Store for her manager training.

At the Pocahontas store, which was in White's district, Debbie Crow was assigned to train

plaintiff.  Once plaintiff's training was completed it was anticipated that she would be manager at the

Hardy Family Dollar Store.

During plaintiff's training, she was provided written material covering all aspects of store

operations such as merchandising and personnel as well as being assigned to operate the cash

registers, stocking, counting out the registers at the end of the day, making deposits, and opening the

store.  The training was generally divided into five separate segments covering one or two topics per

week.  On Thursday of each week, plaintiff took a computerized multiple choice test administered by

White.

On July 17, 2006, plaintiff successfully completed her training and was assigned to manage

the Hardy Dollar Store.  Plaintiff's employment ended approximately two weeks later.

Plaintiff testified that in her initial interview with White, he asked inappropriate questions

and made inappropriate comments about her physical appearance and marital status.  Plaintiff also

testified that White (1) touched her hand on one occasion; (2) rubbed  her shoulders and back when

he came to the store; (3) made statements about her being one of his girls, that he liked her, and that

if she rubbed his back, he would rub hers; and (4) made statements about his wife being ill and that

he was lonely.  Plaintiff testified that once during a training test, White cupped her chin with his

hand.

These statements and incidents occurred while plaintiff was in training.  While White never asked plaintiff specifically to have sex with him, she believed him to mean that if she had sex with him, she would make more progress in the company.

After her promotion to store manager, plaintiff testified that White called her "honey" and "babydoll" on one occasion and that during a telephone call from Florida, White told her that she should be with him in his bed drinking Mai Tais.  Plaintiff alleges that White told her that she could be replaced and that if she did not want the store manager position, he knew of others who would want the position.

Plaintiff contends that she reported these alleged comments without any specifics to Crow and Jason West who was an assistant manager at the Pocahontas store during plaintiff's training.  Plaintiff testified that Crow told her that Crow knew how to handle White, and that if plaintiff wanted to do well, she should try to fit into the group.

Plaintiff also contends that the other employees conspired on behalf of White to force her resignation.  As proof of this conspiracy, plaintiff states that the registers did not run correctly, that she did not have a key to make deposits, that the cash register was short, that the alarm on the back door was broken, that the associates would not work for her, that her car was "keyed" by one of her employees, that a dead cat was placed in her parent's mailbox after she left defendant's employment, that a police officer told her that here were "crazy people" working at the Hardy Dollar Store, and that her employees kept quitting.

On plaintiff's last day of employment, she testified that White pushed her into a storage room after she complained that one of her employees did not show up to help her unload a truck and that she hurt her back when she unloaded the truck by herself.  She testified that White asked

her if she was going to work with him, if she was going to be nice and if she was going to fit into

his group.  It is plaintiff's testimony that White terminated her employment telling her that she

was not going  along with what he wanted her to do and that she was not the kind of person he

needed to be a manager.  Plaintiff testified that she told White that she was not quitting.  White

took her keys and told her to leave.  Plaintiff left the store.

      After she was no longer employed by defendant, plaintiff sent the following email to

defendant's employee relations department.

> I was harassed at work.  I started with Family Dollar June 12th manager training,
> got through training, [and] started as Manager for store 3643 on July 17th.  The
> coworkers there made everything harder than it should be, like they wanted to run
> me off.  I received no help from my DM with computer problems/Detex not
> working and [h]e wouldn't allow me to train a assistant.  My Jeep was vandalized
> on July 24th and I was left to unload a 688 heavy case truck by myself for the
> coworker didn't come in when he was [supposed] to just make it rough on me.  I
> let that worker go after that.  This was July 29th.  Also that day my DM asked for
> keys, [and] forced me to quit.  With everything that I had been put through and a
> DM that would not do his job.  He took my keys and said that you quit.  End of
> story.  He wanted me to quit.  He wanted rid of me.  I feel that I was doing a good
> job with the store.  All I know was that the store was only depositing 700-900
> before I got here, I was depositing 1100-1500.  What's with that.  Plu[s], I had
> many customers glad that the store was under new management. [The] store was
> so dirty and still is.  I only had so many days to clean it up.  If everything was the
> way it should be, I would still have a job.  One person can only do so much under
> that kind of harassment.  I have to go to a chiropractic clinic July 31st and again
> August 4th due to ribs our of place and heavy lifting and turning.  I've been in pain
> all week and I feel that I was done wrong.  I was harassed and had poor treatment
> in doing my job as a manager.  The first day that I got to the Hardy store the petty
> cash was short.  The computers wouldn't poll and Regs work.  The Detex alarm
> had been ripped out of the door.  I feel that just with those two weeks I ran
> across[sic] some dishonest people and a store in a mess.  I have been done wrong.
> Andrea R. Anderson.

Def. Ex. 7.

      Plaintiff also wrote a six page statement to defendant's loss prevention department which

made no mention of any alleged inappropriate behavior by White.  At the time of her

employment, plaintiff was provided with a copy of defendant's policies which prohibited sexual

harassment in the workplace and signed a statement acknowledging its receipt.

The policy states in relevant part

It is the policy of Family Dollar that our workplace is for work, and it is the Company's goal to provide a workplace free of tensions and considerations which do not relate to Company Business.  Unwelcome sexual advances, requests for sexual favors, or other offensive conduct of a sexual nature do not belong in the workplace.

*If an Associate believes he or she is being subjected to verbal or physical harassment, the Associate should immediately notify Corporate Human Resources, telephone number 1-800-932-5378, so that the Company may have an opportunity to investigate and address the situation.*  All complaints will be treated as confidential as possible, and will be investigated by the Company.  No associate will suffer retaliation or intimidation as a result of the good faith, honest use of this internal complaint procedure.  (Emphasis in the original).

Def. Ex. 10.

Prior to plaintiff's employment with defendant, she was employed as a baby sitter;

substitute teacher, sales associate with Walmart, a salesperson for a mobile home company, and

was the co-owner of a small jewelry shop.

II.  *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the

dispute may be decided solely on legal grounds.  *Seymour v. City of Des Moines*, 519 F.3d 790,

796 (8th Cir. 2008);  Fed. R. Civ. P. 56.  The initial inquiry is whether there are genuine factual

issues that can be properly resolved only by a finder of fact because they may reasonably be

resolved in favor of either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Plaintiff as the moving party as the burden to show that the record does not disclose a genuine

dispute on a material fact.  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399 (8th  Cir.

1995).

Plaintiff's Title VII claims of discrimination and her ACRA claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Clegg v. Arkansas Department of Corrections*, 496 F.3d 922, 926 (8ᵗʰ Cir. 2007).   Under this framework, a Title VII plaintiff has the initial burden of establishing a *prima facie* case of discrimination.   *See Elmahdi v Marriott Hotel Services, Inc.*, 339 F.3d 645, 656 (8ᵗʰ Cir. 2003).

A.  *Hostile Work Environment Claim*

To establish a *prima facie* case of sex discrimination based upon an hostile work environment plaintiff must demonstrate "'that she was subjected to unwelcome sex-based harassment that was sufficiently severe or pervasive to alter a term, condition, or privilege of her employment.'"   *Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847, 850 (8ᵗʰ Cir. 2005) (quoting *Joens v. John Morrell & Co.*, 354 F.3d 938, 940 (8ᵗʰ Cir. 2004)).   If the alleged harassing treatment is committed by a co-worker, plaintiff  must also show that defendant "'knew or should have known of the conduct and failed to take proper remedial action.'" *Id.* (quoting *Dhyne v. Meiners Thriftway, Inc*., 184 F.3d 983, 987 (8ᵗʰ Cir. 1999)).   If the harassing employee is a supervisor, defendant "'is vicariously liable for the harassment unless it can establish the affirmative defense defined in *Burlington Indus., Inc. v. Ellerth.*'"  *Id.* at 940 *(quoting* Joens, 354 F.3d at 940); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting that the affirmative defense is available only when no tangible employment action is taken).

"Whether an environment was objectively hostile or abusive must be judged by looking at

the totality of the circumstances, including the frequency and severity of the discriminatory

conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere

offensive utterance, and whether the conduct unreasonably interfered with the employee's work

performance." *Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 484 F.3d 546, 551 (8th Cir. 2007)

(citing *Duncan v. General Motors Corp.*, 300 F.3d 928 (8th Cir. 2002)).

Applying this standard, plaintiff's allegations, if proven, do not rise to harassment as her

allegations relating to White which are sex-based are not so severe or pervasive as to alter a term,

condition, or privilege of her employment. *See LeGrand v. Area Res. for Cmty. & Human Servs*.,

394 F.3d 1098, 1101-02 (8th Cir. 2005) (finding that "to be actionable, conduct must be extreme

and not merely rude or unpleasant;" and stating harassment did not create a hostile work

environment when priest/board member made unwelcome sexually explicit advances on three

separate occasions); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 933-34 (8th Cir. 2002) (finding

five harassing incidents-including a relationship proposition, improper touching, a request that

plaintiff draw a sexually objectionable picture and posting of offensive posters-did not meet the

standard necessary to be actionable).

Because plaintiff has failed to establish that White's actions altered the terms, conditions,

or privileges of her employment, there is no need to address defendant's *Ellerth-Faragher*

defense.

In plaintiff's response to the pending Motion to Strike she contends that in addition to the

sex-based hostile work environment she is  making a hostile work environment claim based upon

the abusive nature of her co-employees.  To establish a Title VII hostile work environment claim,

plaintiff must establish that the harassment is based upon or related to a protected characteristic

under Title VII, *e.g*. race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a)(1);

*Arraleh v. County of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006); *Al-Zubaidy v. TEK Industries,*

*Inc.*, 406 F.3d 1030 (8th Cir. 2005).  To the extent plaintiff is making a Title VII hostile work

environment claim based upon her co-employees behavior that is *unrelated* to plaintiff's race,

color, religion, sex, or national origin, the claim fails.

     B.  *Quid Pro Quo Claim*

     To establish a *prima facie* case of *quid pro quo* sexual harassment, plaintiff must

establish that she was a member of a protected class, was subjected to unwelcome sexual

harassment in the form of sexual advances or requests for sexual favors, the harassment was

based on sex, and her  submission to the unwelcome advances was an expressed or implied

condition for receiving job benefits or her refusal to submit resulted in a tangible job detriment.

*See Newton v. Cadwell Labs*., 156 F.3d 880, 882 (8th Cir. 1998) *(prima facie* elements of *quid*

*pro quo* sexual harassment).

     Plaintiff admits that White never asked her to have sex with him but that she just believed

that if she had sex with him, she would make more progress in the company.  This belief is based

upon a White's, Smith's, and Crow'sremarks and White's actions.

     The Court finds this evidence insufficient to prove that submission to unwelcome advances

was an express or implied condition for plaintiff to receive job benefits or that her refusal to submit

resulted in a tangible job detriment.   To the extent that plaintiff claims that defendant's employees

conspired with White to  discriminate against her based upon her gender by, among other things,

providing her with broken equipment and not working with her in a positive manner, this claim

also fails.

Plaintiff testified to a myriad of difficulties connected with the equipment and employees at the Hardy Dollar Store.   She testified that she overheard a conversation between a current employee and a former employee in which they talked about not cooperating with plaintiff, and trying to get plaintiff to resign.  Plaintiff also testified that one of defendant's employees vandalized her automobile after working hours.

While these events can be called offensive, there is no evidence that they were sex-based or that White conspired with these employees.  *See Hervey v. County of Koochiching*, 527 F.3d 711 (8th Cir. 2008) (citing *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005)) (evidence must show that plaintiff was target of harassment because sex and not just offensive behavior or vulgar behavior).

C.  *Tort of Outrage Claim*

Plaintiff's claim of the tort of outrage under Arkansas law fails.  "In the employment context, an at-will employee cannot predicate a claim of outrage on the mere fact that she was discharged, *see City of Green Forest v. Morse*, 316 Ark. 540, 873 S.W.2d 155, 156 (1994); rather, the employer must have discharged her in a manner which breached its duty to refrain from conduct that is so extreme and outrageous as to go beyond all possible bounds of decency and to be utterly intolerable in a civilized society, *see Unicare Homes, Inc. v. Gribble*, 63 Ark.App. 241, 977 S.W.2d 490 (Ark.Ct.App.1998)."  *Curd v. Hank's Discount Fine Furniture, Inc.*, 272 F.3d 1039, 1042 (8th Cir. 2001).

The conduct underlying plaintiff's claim of outrage, e.g., White's actions and statements, the broken equipment, reluctant and recalcitrant employees, is not so outrageous or extreme that it goes beyond all possible bounds of decency or can it be "regarded as atrocious, and utterly

9

intolerable in a civilized society." *M.B.M. Co. v. Counce*, 268 Ark. 269, 280, 596 S.W.2d 681,

687 (1980).

      D. *Motion to Strike*

      In her opposition to the Motion for Summary Judgment plaintiff presented an affidavit by

Cheryl Villarreal and documents regarding the conviction of a Hardy Dollar Store employee for

the damage to her automobile.  Defendant filed a Motion to Strike contending that the affidavit

and documents are not relevant, and that plaintiff appeared to be raising new claims based upon

the Arkansas Whistle Blower Act and the Racketeer Influenced and Corrupt Organizations Act

("RICO").

      Defendant's Motion to Strike is denied as to Villarreal's affidavit and the documents related

to the conviction of one of  defendant's employees for damaging plaintiff's automobile.  This

information is relevant to show the abusive nature of plaintiff's co-workers and to support plaintiff's

assertions regarding the working conditions at the Hardy Dollar Store.

      The motion is granted as it applies to plaintiff's reference to alleged violations of the

Arkansas Whistle Blower Act and RICO laws.  These claims are not properly before the Court as

they were not plead in her complaint.[1]

---

[1]Plaintiff does makes a reference to the National Labor Relations Act in her complaint, but does not argue that she is bringing a claim under that Act.

III. *Conclusion*

Because plaintiff has failed to establish a *prima facie* case of sexual harassment in the form

of hostile work environment claim or a *quid pro quo* claim, and has failed to state facts that even if

proven true would support a finding of a tort of outrage under state law, her complaint is dismissed

and all pending motions are dismissed as moot.  Judgment will be entered accordingly.

IT IS SO ORDERED THIS __11__ day of _August_, 2008.


_____
James M. Moody
United States District Judge

11